UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES E. KARLSTROM,

                                        Plaintiff,          **DECISION**
                                                            **and**
                        v.                                  **ORDER**

NANCY A. BERRYHILL,[1] Commissioner of                      **16-CV-00586F**
  Social Security,                                          (**consent**)

                                        Defendant.
_____

APPEARANCES:          REGINA A. WALKER, ESQ.
                      Attorney for Plaintiff
                      300 International Drive
                      Suite 100
                      Williamsville, New York  14221

                      JAMES P. KENNEDY
                      UNITED STATES ATTORNEY
                      Attorney for Defendant
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York  14202
                              and
                      BENIL ABRAHAM
                      Special Assistant United States Attorney, of Counsel
                      United States Attorney's Office
                      c/o Social Security Administration
                      Office of General Counsel
                      26 Federal Plaza – Room 3904
                      New York, New York  10278


## JURISDICTION

On June 19, 2018, the parties to this action, consented pursuant to 28 U.S.C. §

636(c) to proceed before the undersigned.  (Dkt. 14).  The matter is presently before the

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017.  Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn Colvin as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

court on motions for judgment on the pleadings filed by Plaintiff on May 8, 2017 (Dkt. 11), and by Defendant on July 7, 2017 (Dkt. 12).

## **BACKGROUND**

Plaintiff James E. Karlstrom ("Plaintiff" or "Karlstrom"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on January 28, 2011, for Disability Insurance Benefits under Title II of the Act ("SSDI"), and for Supplemental Security Income Benefits under Title XVI of the Act ("SSI") (together, "disability benefits"). In applying for disability benefits, Plaintiff alleges he became disabled on October 14, 2010, based on ruptured discs in his neck, left arm and hand paralysis, high blood pressure, depression, anxiety, and a headache condition. AR[2] at 330. Plaintiff's application was denied April 28, 2011, AR at 138-43, and on May 17, 2011, Plaintiff requested a hearing before an administrative law judge ("ALJ"), AR at 150-51, which was held August 15, 2012, in Jamestown, New York ("Jamestown"), via videoconference, before ALJ Maryellen Weinberg ("ALJ Walker"). AR at 37-73. Plaintiff, represented by counsel Regina A. Walker, Esq. ("Walker"), appeared and testified at the hearing. Also testifying at the hearing were vocational expert ("VE") Miriam Greene ("VE Greene"), and medical expert Charles Plotz, M.D. ("Dr. Plotz").

On September 25, 2012, the ALJ issued a decision denying Plaintiff's claim, AR at 118-28, which Plaintiff appealed to the Appeals Council. AR at 238-39. On March 6,

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on February 16, 2017 (Dkt. 7).

2014, the Appeals Council issued a decision remanding the matter to the ALJ, AR at

133-36, and on June 9, 2014, a second hearing was held in Jamestown via

videoconference before ALJ William W. Weir ("ALJ Weir"), AR at 74-116, who, on

March 16, 2015, found Plaintiff not disabled.  AR at 10-22.  Plaintiff again requested

review by the Appeals Council which, on July 5, 2016, denied the request for review,

rendering the ALJ's decision the Commissioner's final decision.  AR at 1-6.  On July 19,

2016, Plaintiff commenced the instant action seeking judicial review of the ALJ's July 5,

2016 decision ("the ALJ's decision").

On May 8, 2017, Plaintiff filed a motion for judgment on the pleadings (Dkt. 11)

("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion

for Judgment on the Pleadings (Dkt. 11-1) ("Plaintiff's Memorandum").  On July 7, 2017,

Defendant filed a motion for judgment on the pleadings (Dkt. 12) ("Defendant's Motion"),

attaching the Commissioner's Brief in Support of the Commissioner's Motion for

Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to the Local

Standing Order on Social Security Cases (Dkt. 12-1) ("Defendant's Memorandum").  On

July 28, 2017, Plaintiff filed Plaintiff's Reply Memorandum of Law in Support of Plaintiff's

Motion for Judgment on the Pleadings (Dkt. 13).  Oral argument was deemed

unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is

GRANTED.

**<u>FACTS</u>**[3]

Plaintiff James E. Karlstrom ("Plaintiff" or "Karlstrom"), born August 27, 1966, was 47 years old as of the second administrative hearing held June 9, 2014. AR at 20, 78. Plaintiff, who lives in an apartment with his "significant other," AR at 78-79, graduated from high school, AR at 42, 78, underwent vocational training as a corrections officer, AR at 78, and has past relevant work experience working as a corrections officer for 23 years in New York State correctional facilities, AR at 41-42, work which, as performed by Plaintiff, qualifies as semi-skilled, medium exertion. AR at 65.

Insofar as Plaintiff claims he is disabled by a headache condition, Plaintiff maintains he first began experiencing disabling headaches more than 10 years ago. AR at 80. On December 17, 2003, Plaintiff underwent a magnetic resonance imaging test ("MRI") of his brain to diagnose the source of headaches Plaintiff regularly experienced, AR at 406, which caused him to miss work. AR at 80. The MRI showed a small intraparenchymal CSF space in the left basal ganglion, evidence of an arachnoid cyst in the region of the temporal lobe frontally or area of encephalomalacia from previous injury, sinomucosal disease, and prominent anterior pituitary gland. AR at 406. In 2009, Plaintiff's primary care physician, Steven Barnes, M.D. ("Dr. Barnes"), opined Plaintiff's headaches were likely muscle tension headaches, although Plaintiff does have a benign cyst in his brain. AR at 414. The headaches caused Plaintiff to be nauseated and dizzy, requiring Plaintiff to miss work, for which he sought and was approved leave under the Family Medical Leave Act. AR at 81. Plaintiff estimated that

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for judgment on the pleadings.

his headaches caused him to miss more than two days of work each week during his last five years working.  AR at 81.

Plaintiff stopped working on October 14, 2010, allegedly because of head, neck and upper back injuries, including ruptured and herniated cervical disks, increasing headaches, and numbness in his left arm, leg, hand and shoulder, sustained when he was assaulted by an inmate at work ("the assault"), and fell, hitting the back of his head and neck into a wall, and falling to the ground with a concussion.  AR at 79.  On November 1, 2010, Plaintiff underwent an MRI of his cervical spine which showed C3-4 spinal stenosis secondary to posterior vertebral body spurring, and bilateral C3-4, right C5-6 and left C6-7 intervertebral foramina stenosis.  AR at 430.  On November 8, 2010, Plaintiff underwent a neurological consultation with neurologist John Pollina, Jr., M.D. ("Dr. Pollina"), who diagnosed Plaintiff with cervical stenosis at C3-4, small cervical disc herniation C3-4 with spondylosis, cervicalgia, cervical radiculopathy, and headache, and found Plaintiff 100 % disabled for purposes of receiving Workers' Compensation.  AR at 431-33.  Subsequent to the assault, Plaintiff, underwent independent medical examinations ("IME"), by Gregory Shankman, M.D. ("Dr. Shankman"), an orthopedic surgeon, in connection with Plaintiff's claim for Workmen's Compensation benefits for the injuries sustained in the assault, and Plaintiff was diagnosed with pre-existing cervical stenosis, aggravated by the assault, and a cervical herniated disc at C3-4 related to the assault.  AR at 578-81.  As a result of his injuries sustained in the assault, on February 8, 2011, Plaintiff underwent surgical fusion of two cervical vertebrae ("cervical disc fusion"), performed by Drs. Pollina and Joseph Muscarella, Jr. ("Dr.

Muscarella"), at Sisters of Charity Hospital in Buffalo, New York, during which a "fairly large central disc herniation" was removed.  AR at 454.

On September 30, 2011, Plaintiff commenced occupational therapy with Mary R. Orrange, OTR ("Orrange"), of Buffalo Ergonomics and Rehabilitation Services.  AR at 660-65.  Upon evaluating Plaintiff, Orrange assessed that Plaintiff could not resume his previous work as a corrections officer, recommended Plaintiff pursue vocational counseling to find other employment, and reported Plaintiff could sit, bend, and walk, had average right-hand grip strength and above-average right-hand coordination, but was limited as to kneeling, crawling, working above shoulder level, and left-hand grip and coordination.  *Id.*

Although by March 13, 2012, the cervical disc fusion was considered medically successful with full fusion at C3-4 and "greatly improved" symptoms, with Plaintiff cleared to "resume all activities as tolerated," AR at 741, at the hearing Plaintiff testified to little to no improvement of his symptoms, and that his left arm remained numb from his elbow through his hand, causing his left hand to "lock up," and trouble walking especially climbing stairs.  AR at 82-85.  Plaintiff remained out of work and continued to receive Workers' Compensation until August 2013, when Plaintiff was approved for a disability pension from his former employer.  AR at 79-80.

At the second administrative hearing, Plaintiff described his activities as shopping with his significant other, visiting with family including his adult children, brother, niece and nephew, some meal preparation, and collecting coins and antiques.  AR at 92, 98-99.  Plaintiff used to play in an adult soccer league and coach soccer, but is no longer able to do so.  AR at 99.

## DISCUSSION

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has

instructed . . . that the factual findings of the Secretary,[4] if supported by substantial

evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

## 2.    Disability Determination

The applicable regulations set forth a five-step analysis the Commissioner must

follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and

416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*,

675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is

engaged in substantial gainful activity during the period for which the benefits are

claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such

activity, the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.*

Next to be determined is whether the applicant has a severe impairment which

significantly limits the physical or mental ability to do basic work activities, as defined in

the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent such an

impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an

impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration

requirement,[5] there is a presumption of inability to perform substantial gainful activity,

and the claimant is deemed disabled, regardless of age, education, or work experience.

42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and

416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of
the Secretary of Health and Human Services in Social Security cases was transferred to the
Commissioner of Social Security, effective March 31, 1995.
[5] The duration requirement mandates the impairment must last or be expected to last for at least a
continuous twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity," which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").[6]  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement through December 31, 2015, AR at 15, Plaintiff did not engage in substantial gainful activity since October 14, 2010, his alleged disability onset date, *id.*, Plaintiff suffers from the severe impairment of degenerative joint disease of the cervical spine status-post cervical disc fusion, *id.*, that Plaintiff's medically determinable

---

[6] "Past relevant work" or "PRW" is defined as work the claimant performed within the past 15 years as substantial gainful activity, for a sufficient period of time for the claimant to learn how to perform the work. 20 C.F.R. §§ 404.1560(b)(1), 404.1565, and 416.960(b).  Whether past work qualifies as relevant is determined either as the claimant actually performed it, or as the work generally is performed in the national economy.  *Id.*

impairments of hypertension, diabetes mellitus, headaches, anxiety and depression do not have more than a minimal impact on Plaintiff's ability to do work activities, *id.*, at 15-16, and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1. *Id.* at 17. The ALJ found that Plaintiff retains the residual functional capacity to perform a reduced range of medium work with limitations of being able to alternate between sitting and standing every 10 minutes, avoiding working at heights, and inability to rotate his neck more than 60 degrees, or to flex or extend his neck more than 45 degrees. *Id.* Based on these limitations, the ALJ determined Plaintiff could not perform any past relevant work, including as a corrections officer, as classified in the Dictionary of Occupational Titles ("DOT"), *id.* at 19, but could perform work as a marker or an order caller, both of which are classified as light, unskilled work. *Id.* at 21. Accordingly, the ALJ determined Plaintiff is not disabled as defined under the Act. *Id.* at 21-22.

In support of judgment on the pleadings, Plaintiff argues the record is devoid of substantial evidence supporting the ALJ's determination that Plaintiff, despite numerous physical and mental impairments, retains the residual functional capacity ("RFC"), for medium work, limited only to being able to alternate between sitting and standing every 10 minutes, an inability to rotate his neck more than 60 degrees, or to flex or extend his neck more than 45 degrees, and avoiding working around heights, Plaintiff's Memorandum at 2, because the ALJ failed to evaluate Plaintiff's headache condition, *id.* at 21-22, improperly evaluated the opinions of Plaintiff's treating physicians and the Worker's Compensation IME, *id.* at 23-25, as well as Plaintiff's credibility, Plaintiff's Memorandum at 25-27, and further challenges the ALJ's

determination that sufficient jobs exist in the national economy that Plaintiff can perform. *Id.* at 2, 27-28. In opposition to Plaintiff's Motion and in support of Defendant's Motion, Defendant maintains substantial evidence in the record supports the ALJ's determination that Plaintiff's headaches are not severe, Defendant's Memorandum at 15-17, the ALJ's evaluation of the medical opinion evidence, *id.* at 17-20, and the ALJ's credibility determination, *id.* at 20-22, and that the VE's testimony supported the ALJ's determination that there are sufficient jobs in the national economy that Plaintiff, despite his limitations, can perform. *Id.* at 22-24. In further support of Plaintiff's Motion, and in opposition to Defendant's Motion, Plaintiff maintains the ALJ failed to properly evaluate the severity of Plaintiff's headaches, Plaintiff's Reply at 2-4, and the medical opinion evidence, *id.* at 4-7, the ALJ's credibility determination is not supported by substantial evidence, *id.* at 7-8, and the VE's testimony does not support the ALJ's determination that Plaintiff has the RFC to perform other work in the national economy. *Id.* at 8-10.

Because no challenge is raised to the first three steps of the five-part analysis, the court does not address them, but limits its review to only the fourth and fifth steps, *i.e.*, whether substantial evidence in the record supports the ALJ's determinations that Plaintiff retains the RFC capacity to perform medium work, as limited by his need to alternate between standing and sitting every ten minutes, limitations to rotating, flexing and extending his neck, and a need to avoid working at heights, as well as that sufficient work that Plaintiff, despite his limitations, exists in the national economy.

### A. Fourth Step

The fourth step of the five-part analysis is to consider the applicant's "residual functional capacity" ("RFC"), *i.e.*, the ability to perform physical or mental work activities

on a sustained basis despite limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"), defined as work as the claimant actually performed it or as it generally is performed in the national economy, within the last 15 years or within 15 years prior to the date disability must be established. 20 C.F.R. §§ 404.1560(b)(1), and 416.960(b)(1). In the instant case, the ALJ determined Plaintiff retains the RFC for medium work, provided Plaintiff is allowed to alternate between sitting and standing every 10 minutes, is not required to rotate his neck more than 60 degrees, or to flex or extend his neck more than 45 degrees, and is not required to work at heights. AR at 17. Plaintiff argues the ALJ's finding regarding Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to evaluate Plaintiff's headache condition, Plaintiff's Memorandum at 21-22, and improperly evaluated the opinions of Plaintiff's treating physicians and the Worker's Compensation IME, *id.* at 23-25, as well as Plaintiff's credibility, Plaintiff's Memorandum at 25-27. The court addresses each of these arguments in turn.

With regard to Plaintiff's argument that the ALJ failed to evaluate Plaintiff's headache condition, Plaintiff's Memorandum at 21-22, the ALJ acknowledged that Plaintiff "testified to debilitating headaches that leave him bedridden for days at a time," AR at 18, but that "there is no evidence of this whatsoever. . . ." *Id.* Substantial evidence supports this finding.

Specifically, in his Activities of Daily Living report dated March 1, 2011, Plaintiff described his headaches as a "stabbing" pain in the back of his head that sometimes travels into his eyes, rating their severity at 7 on a scale of 10. AR at 356. For his

headaches, which were accompanied by dizziness and nausea, Plaintiff took Imitrex (migraine medication), and then had to lay down for an hour until the Imitrex began to work. *Id.*

The medical evidence establishes that beginning July 14, 2010, Plaintiff sought treatment for his headaches from Thomas McTernan, M.D. ("Dr. McTernan"), who described the headaches as "somewhat migraine in nature," starting at the back of his head and working around, remarked Plaintiff was off his blood pressure medication, and prescribed Imitrex. AR at 537. On July 23, 2010, Dr. McTernan reported Imitrex did not completely relieve Plaintiff's headaches, but helped, opined Plaintiff's "uncontrolled hypertension" might be related to his headaches, and prescribed hypertension medication. AR at 538. On August 23, 2010, Plaintiff reported fewer headaches with the blood pressure medication. AR at 539.

Following the October 14, 2010 assault, Dr. Pollina, on November 8, 2010, reported Plaintiff with "severe suboccipital headaches," noting Plaintiff's history of chronic headaches, and recommending re-evaluation in six to eight weeks while Plaintiff pursued chiropractic treatment for injuries sustained in the assault. AR at 431-33. Dr. Pollina reported Plaintiff's suboccipital headaches continued on August 8, 2011, AR at 636, 639, December 16, 2011, AR at 745, and December 27, 2012, AR at 815. On September 19, 2011, Dr. Pollina reported the physical therapy Plaintiff attended following his cervical disc fusion "helped his suboccipital headaches dramatically." AR at 634.

Dr. Barnes reported Plaintiff complained of headaches on October 4, 2011, AR at 668, May 21, 2012, AR at 804, and August 28, 2012, AR at 825-26. At more recent

examinations, Dr. Barnes reported Plaintiff has "persistent neck pain with headaches," but that Plaintiff rated his pain on a scale of 10 at 1 or 2, and Plaintiff's use of Lortab was less frequent.  AR at 827 (October 1, 2012), 830 (October 15, 2012), 835 (November 29, 2012), 842 (January 28, 2013), 854 (April 15, 2013), 865 (October 17, 2013), 874 (December 18, 2013), and 883 (March 20, 2014).  In fact, at several appointments, Dr. Barnes mentioned Plaintiff's chronic headaches diagnosis, but did not report Plaintiff as complaining of headaches at that time.  AR at 845-48 (April 8, 2013), 863-64 (July 15, 2013), 870 (November 11, 2013), and 879 (February 24, 2014).  A fair reading of Dr. Barnes's treatment notes dated January 20, 2014, shows Plaintiff complained of a headache in connection with influenza with Plaintiff's other symptoms reported as "dizziness, sore throat, chest congestion, headache, and muscle aches for the past 3 days."  AR at 876-78.

Upon examination on October 31, 2012, neurologist Gregory Castiglia, M.D. ("Dr. Castiglia"), reported "good resolution" of Plaintiff's headaches following the cervical disc fusion, but that recently Plaintiff's symptoms, including his suboccipital headaches, were increasing.  AR at 812-14.  After a consultation examination on January 18, 2013, neurologist Peterkin Lee-Kwen, M.D. ("Dr. Lee-Kwen"), diagnosed Plaintiff with "chronic tension type headache" which was "stable and controlled."  AR 821.

Accordingly, there is substantial evidence in the record supporting the ALJ's determination that Plaintiff's medical records did not support Plaintiff's contention that his headaches were debilitating or a severe impairment.  Significantly, nothing in the medical records corroborates Plaintiff's claim regarding the debilitating nature of his headaches at least after undergoing cervical disc fusion.  Nevertheless, despite

determining Plaintiff's headaches were not a severe impairment, the ALJ specifically stated that in assessing Plaintiff's RFC, the effects of all of Plaintiff's impairments, both severe and non-severe, were considered. AR at 15. There thus is no merit to Plaintiff's argument that because Plaintiff's RFC, as articulated by the ALJ, does not reference any limitation posed by Plaintiff's headaches, the ALJ necessarily failed to account for the alleged limiting effects of Plaintiff's headaches in arriving at Plaintiff's RFC. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (although the ALJ's step four RFC finding did not explicitly include the plaintiff's non-exertional functional limitations, "Step Four findings need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." (citing *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (no function-by-function analysis for medical conditions or impairments the ALJ determines are not credible nor supported by the record is necessary))).

Nor is there any merit to Plaintiff's argument, Plaintiff's Memorandum at 23-25, that the ALJ improperly evaluated the opinions of Plaintiff's treating physicians and the Worker's Compensation IME. The Act requires ALJs to grant significant weight to treating physicians' opinions supported by medical evidence in the record and requires that a treating physician opinion be granted "controlling weight" when the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2). Treating physician opinions, however, are not determinative and, thus, are granted controlling weight only when they are not inconsistent with other controlling

evidence. 20 C.F.R. § 404.1527(d); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

Here, the opinions referenced by Plaintiff as establishing Plaintiff's treating physicians, especially Dr. Pollina, Plaintiff's neurosurgeon, and Dr. Barnes, Plaintiff's primary care/pain management physician, considered Plaintiff disabled were made in the context of Plaintiff's Worker's Compensation claim. It is basic, however, that "the SSA's disability process is different from the process for determining entitlement to Workers' Compensation benefits, and it employs significantly different standards." *Donahue v. Colvin*, 2018 WL 2354986, at * 3 (W.D.N.Y. May 24, 2018). Further, "the applicable regulations and Second Circuit precedent establish that an ALJ is not bound by the disability findings of any other agency." *Id.* (citing 20 C.F.R. §§ 404.1504, 416.904; *Atwater v. Astrue*, 512 Fed.Appx. 67, 70 (2d Cir. Feb. 21, 2013), and *Lohnas v. Astrue*, 510 Fed.Appx. 13 (2d Cir. Jan. 21, 2013)). Moreover, the legal determination of whether Plaintiff is disabled is for the Commissioner. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("some kinds of findings – including the ultimate finding of whether a claimant is disabled and cannot work, are 'reserved to the Commissioner.'" (quoting 20 C.F.R. § 404.1527(e)(1))). As such, the Commissioner "considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability," *id.*, and, accordingly, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Id.*

Further, the medical findings of both Drs. Barnes and Pollina fail to establish Plaintiff's claim that he is disabled under the Act. In particular, on September 16, 2011, Plaintiff underwent a neurosurgical evaluation by Dr. Pollina who reported Plaintiff was

"slowly increasing his activities," and "engaged in post-operative physical therapy which helped his suboccipital headaches dramatically," AR at 754, and Plaintiff was "slowly improving." AR at 755. On March 9, 2012, Dr. Pollina examined Plaintiff, reporting Plaintiff "is feeling good at this time," with fewer headaches following surgery, taking less pain medication, and stated "his symptoms are very tolerable at this time." AR 741. Dr. Pollina considered Plaintiff's symptoms as "greatly improved post-operatively," AR at 742, and that Plaintiff should "resume all activities as tolerated." *Id.* Following examinations on October 1, 2012, January 28, 2013, October 17, 2013, and March 20, 2014, Dr. Barnes described Plaintiff as rating his pain at only 1 or 2 on a scale of 10, and taking his pain medication "infrequently." AR at 827, 842, 865, and 883. The opinions of Plaintiff's treating physicians thus are not substantial evidence of Plaintiff's claimed impairment for purposes of establishing disability under the Act.

Nor did the ALJ err by affording Dr. Shankman's April 15, 2012 opinion great weight. AR at 20 (citing AR at 785-88). In particular, Dr. Shankman's opinion was based on his review of the medical evidence, including reports from Drs. Barnes and Pollina, diagnostic test results, and physical examination. AR at 785-88. Significantly, with the exception of expressing that Plaintiff is disabled for purposes of Worker's Compensation, Dr. Shankman's opinion is largely consistent with the opinions of Drs. Barnes and Pollina. *Id.* Moreover, Dr. Shankman's opinion that Plaintiff could perform work, restricted to lifting and carrying less than 50 lbs., no climbing heights, no rapid, repetitive neck motions, and the option of sitting or standing at his own volition, *id.* at 787, is essentially identical to the RFC as determined by the ALJ. The ALJ assessment that Plaintiff can rotate his neck to 60 degrees, and flex and extend his neck to 45

degrees, in contrast to Dr. Shankman's opinion that such movements were limited to 35 degrees, is nevertheless supported by the opinions of Dr. Pollina upon examining Plaintiff on March 9, 2012, AR at 742, and by Dr. Castiglia upon examining Plaintiff on October 31, 2012, AR at 812-13, that Plaintiff has "full range of motion of the cervical spine." Nor did the ALJ err by failing to specifically include two additional restrictions imposed by Dr. Shankman, including inability to work in cramped or confined positions, and overhead, *id.*; rather, the record is devoid of any evidence supporting a need for Plaintiff to avoid cramped or confined positions, and the three jobs identified by the VE, including assembler, order caller, and marker, do not require working overhead assuming, *arguendo*, any position requiring overhead work would also be eliminated from consideration by the restrictions posed by Plaintiff's impairments to neck movements.

Because substantial evidence supports the ALJ's assessment of Plaintiff's RFC, and the ALJ afforded all deference due to Plaintiff's treating physicians in making such assessment, the ALJ did not violate the treating physician's rule.

Nor did the ALJ err in assessing Plaintiff's credibility, as Plaintiff argues. Plaintiff's Memorandum at 25-27. In particular, Plaintiff maintains the ALJ improperly discredited Plaintiff's claims regarding the severity and disabling nature of his headaches for which medical evidence in the record establishes Plaintiff has a headache condition that was exacerbated by the injuries sustained in the 2010 assault, *id.* at 27, that despite some temporary improvement in his symptoms following the cervical disc fusion, Plaintiff's symptoms began to worsen in August 2011, *id.*, and the fact Plaintiff received a disability retirement does not undermine his credibility. *Id.*

Although an ALJ "is required to take the claimant's reports of pain and other limitations into account," 20 C.F.R. § 416.929, the ALJ "is 'not required to accept the claimant's subjective complaints without question.'" *Campbell v. Astrue*, 465 Fed.Appx.4, 7 (2d Cir. Jan. 6, 2012) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)). The ALJ is permitted to exercise discretion in weighing the credibility of the claimant's testimony against other evidence in the record. *Id.* This is done according to a two-step process. *Id.*; 20 C.F.R. § 404.1529(a), (c)(1); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996).

First, "'the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged.'" *Campbell*, 465 Fed.Appx. at 7 (quoting *Grenier*, 606 F.3d at 49). "If so, the ALJ must then consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record.'" *Id.* (internal quotation marks omitted; alteration in *Genier* ). "For purposes of our review, however, we have long held that '[i]t is the function of the [Commissioner], not ourselves, ... to appraise the credibility of witnesses, including the claimant.'" *Id.* (quoting *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir. 1983)) (alteration in *Carroll* ). In this regard, the Second Circuit has instructed that "an ALJ's credibility determination is generally entitled to deference on appeal." *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013). In the instant case, substantial evidence supports the ALJ's credibility determination.

Preliminarily, the court addresses Plaintiff's argument, Plaintiff's Memorandum at 27, that the ALJ erred in construing Plaintiff's statements that he was "on track" for

retirement, AR at 18, 19 (referencing AR at 741 (Dr. Pollina reporting on March 9, 2012, that Plaintiff "is waiting for Social Security Disability and his retirement"), and at 746 (Dr. Pollina reporting on December 16, 2011, Plaintiff stated he was not then working but "is on track for retirement")), as evidence that Plaintiff was not working so as to bolster his disability benefits claim, a point on which the Second Circuit has not spoken, and on which there is a split of authority within the circuit. *Contrast Velez v. Commissioner of Social Security*, 2017 WL 6761925, at * 21 (S.D.N.Y. Dec. 12, 2017) (adopting magistrate judge's report and recommendation that "plaintiff's retirement status gave rise to an inference that he was not motivated to work"); and *Pirog v. Colvin*, 2016 WL 5476006, at * 6 (S.D.N.Y. Sept. 28, 2016) (upholding the ALJ's determination that the plaintiff's receipt of a disability pension "may have undermined the reliability of some of his testimony"), with *Stern v. Colvin*, 2017 WL 10085603, at * 17 (S.D.N.Y. July 28, 2017) (rejecting ALJ's determination that fact that the plaintiff has already been approved for a disability retirements may have reduced the plaintiff's motivation to seek further employment "because arguably every social security claimant has a reduced motivation to work when they hope to receive disability benefits in lieu of working," but nevertheless finding the ALJ's credibility determination supported by other substantial evidence in the record), *report and recommendation adopted by* 2018 WL 3863448 (S.D.N.Y. Aug. 14, 2018); and *Thrasher v. Colvin*, 2015 WL 3463453, at ** 8-9 (W.D.N.Y. June 1, 2015) (holding "[t]he ALJ improperly used Plaintiff's receipt of a retirement pension as a means to impugn his credibility"). In the instant case, however, the court need not resolve the split of authority because here, as in *Stern*, the ALJ's

credibility determination did not rest solely on Plaintiff's assertion that he was anticipating retirement.

Specifically, substantial evidence supports the ALJ's credibility determination that found inconsistencies between Plaintiff's clinically reported findings compared to Plaintiff's self-reported symptoms. For example, Dr. Pollina reported on January 10, 2011, that Plaintiff complained of "interscapular and bilateral shoulder pain left being greater than right. He has associated numbness, tingling and occasional pain down the left arm. He has noted that his left arm is clumsy at times in that he is unable to lift light object even without dropping them from his left hand." AR at 436. Nevertheless, these subjective complaints were not confirmed upon Dr. Pollina's physical examination, which found Plaintiff with "slightly decreased grip on the left compared to the right. He has normal strength of the upper and lower extremities bilaterally in the proximal and distal muscles. He has normal reflexes. He has no clonus. He has normal muscle bulk and tone." *Id.* at 437. On March 9, 2012, Dr. Pollina reported did not take any pain medications for "several weeks," AR at 741, and that upon examination, Plaintiff has "[e]xcellent upper extremity reflexes, sensory and motor exam. Normal muscle tone in bilateral upper extremities. . . . Full range of motion of the cervical spine." *Id.* at 742. The ALJ also relied in assessing Plaintiff's credibility on Dr. Pollina's report, based on a December 16, 2011 examination of Plaintiff, that physical therapy "helps with his strength and mobility," and also "helps to relieve his pain and helps him stay off of the Lortab." AR at 745.

Accordingly, substantial evidence in the record supports the ALJ's determination that Plaintiff's subjective complaints are not fully credible.

**B.    Fifth Step**

At the fifth step of the analysis, the ALJ determines whether, given the applicant's age, education, and past work experience, the applicant retains the RFC to "perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  Here, Plaintiff argues the VE's testimony regarding the ALJ's hypothetical was vague and did not sufficiently address Plaintiff's need to alternate at will between sitting and standing because VE Greene did not specify the Department of Labor ("DOL") study to which she referred in support of her determination that Plaintiff could sit or stand at will while performing the assembler, marker or order caller job.  Plaintiff's Memorandum at 27-28.  In opposition, Defendant maintains the ALJ was permitted to rely on VE Greene's testimony that she had personal experience with placing workers into jobs despite certain limitations, including an at-will sit and stand option.  Defendants' Memorandum at 23.  In further support of his motion, Plaintiff reiterates that VE Greene failed to provide clear testimony regarding the DOL study to which she referred as addressing the impact the need to alternate between sitting and standing had on available jobs, and maintains VE Green did not actually testify that she had observed the specific jobs performed by a worker who needed to alternate at will between sitting and standing, Plaintiff's Reply at 9, and asserts for the first time the ALJ failed to elicit from VE Green her basis for testifying that Plaintiff could perform the cited jobs despite limitations to cervical flexion, extension, and rotation, a further point on which the DOT is silent.  *Id.*

Here, the record shows the ALJ took testimony at the hearing from VE Greene, who testified Plaintiff's previous employment as a corrections officer constituted semi-skilled, medium exertion work. AR at 110. The ALJ posed for VE Greene's consideration a hypothetical individual who could perform medium work, limited by a need to alternate between sitting and standing every 10 minutes, with restrictions to rotating his neck no more than 60 degrees, flexing and extending his neck no more than 45 degrees, and could not work at heights, and VE Greene responded such an individual could not perform Plaintiff's PRW as a corrections officer, but could work as an assembler, marker, and order caller as those jobs are described in the DOT. AR at 110. According to VE Greene, although the DOT does not address the option to alternate every 10 minutes between sitting and standing, her testimony that Plaintiff could perform the specified jobs despite such limitations was based on her experience with job placement and having observed people working such jobs who alternated between sitting and standing. AR at 111-13.

Insofar as VE Greene's testimony that Plaintiff's need to alternate between sitting and standing every 10 minutes would not render Plaintiff unable to perform the cited positions was extrapolated from VE Greene's own experience and an unspecified DOL report, the Second Circuit has repeatedly held that in the absence of any regulation or court order requiring a VE to specifically identify a supporting source or documentation, a VE's "general" identification of such source is sufficient. *See Dugan v. Social Security Administration Commissioner,* 501 Fed.Appx. 24, 25 (2d Cir. 2012) (citing *Brault v. Social Security Administration Commissioner*, 683 F.3d 443, 450 (2d Cir. 2012) (citing *Galiotti v. Astrue*, 266 Fed.Appx. 66, (2d Cir. Feb. 25, 2008))). Accordingly, the ALJ's

acceptance of VE Greene's testimony regarding the effect on the cited jobs of Plaintiff's need to alternate between sitting and standing every ten minutes was not erroneous such that VE Greene's testimony on this point constitutes substantial evidence on which the ALJ properly relied.

With regard to Plaintiff's newly asserted claim that the ALJ failed to elicit from VE Greene her basis for testifying that Plaintiff could perform the cited jobs despite limitations to cervical flexion, extension, and rotation, a further point on which the DOT is silent, Plaintiff's Reply at 9, this point is waived. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (district court has discretion to consider argument made for the first time in reply memorandum of law (citing *Bayway Refining Co. v. Oxygenated Marketing & Trading A.G.*, 215 F.3d 219, 226 (2d Cir. 2000) (reviewing for abuse of discretion district court's decision to rely on evidence submitted with moving party's reply papers)). *See also Lowry v. Astrue*, 474 Fed.Appx. 801, 804 n. 1 (2d Cir. Apr. 6, 2012) (noting that the newly asserted basis for disability asserted by the plaintiff for the first time in a reply brief on appeal was waived (citation omitted)); *Davila v. Barnhart*, 225 F.Supp.2d 337, 339-40 (S.D.N.Y. 2002) ("Normally, arguments first made in a reply need not be considered . . .," but considering such argument because it was "spurred" by an intervening decision (citation omitted)). Even if the court did consider this belated argument, the limitations to Plaintiff's rotation, flexion and extension of his neck were incorporated into the ALJ's hypothetical posed to the VE. *See* AR at 110. Accordingly, this belatedly asserted argument is without merit.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 11) is DENIED; Defendant's

Motion (Dkt. 12) is GRANTED.  The Clerk of Court directed to close the case.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:  October 4, 2018
     Buffalo, New York